CHARLEY BROCK V. STATE.

No. 24889. June 21, 1950.
State's Motion for Rehearing Granted October 18, 1950.

*Robert A. Estes,* Houston, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

This is a conviction for rape; the punishment, thirty years, in the penitentiary.

The indictment, as same appears in the transcript, does not conclude with the phrase, "against the peace and dignity of the State," as required by the mandatory provisions of our Constitution (Art. V., Sec. 12). Such an indictment is fatally defective. See Note 5, Art. V., Sec. 12, Vernon's Annotated Constitution of Texas.

The judgment is reversed and prosecution ordered dismissed.

Opinion approved by the court.

ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

As a part of the motion for rehearing, the state has caused the clerk of the district court to prepare a supplemental transcript and file it in this cause which discloses that an error was made in copying the indictment in the original transcript in that the words "against the peace and dignity of the State" were omitted. With this correction the indictment seems to be valid. The state's motion for rehearing is granted. The order reversing and ordering the cause dismissed is now set aside and the appeal is considered on its merits.

Appellant is charged with the rape of a thirteen year old girl who testified, in behalf of the state, that he came to her home on Sunday afternoon and asked her to go to his home for the purpose of looking after his children while he and his wife went some place. She said that he drove to different places, one of which was out of town and to a drive-in place by the highway where they drank a coca cola. He then turned back toward Nacogdoches, but before reaching the city he turned off a narrow wooded road and drove about two miles where he

forced her to have sexual intercourse with him. He then brought her to Nacogdoches to a picture show, after which he took her near her home and let her out but threatened to kill her if she ever told it.

For some reason, the parents asked her the following Tuesday night where they had gone and elicited from her the information along the lines of her testimony. The county attorney was consulted and the parents took the girl to a doctor who examined her and he testified on behalf of the state that a condition existed, as revealed by his examination, that indicated that she had been penetrated.

Appellant testified in his own behalf and stoutly denied that he had intercourse with the girl, but admitted taking her for a ride, much as she had described, at a time when his wife and family were out of the state. The jury accepted the girl's version of the testimony and assessed the penalty of thirty years in the penitentiary.

The record contains five bills of exception upon which reversal is sought. Bill No. 1 complains of the evidence of the girl to the effect that she took her father and the officers to the place where the attack had been committed. She said: "I showed the place where Mr. Brock had stopped the Sunday before that. The tracks were on the ground and we also found a handkerchief on the ground where he had left it the Sunday before." The bill complains of this testimony as hearsay and out of the hearing of defendant. We do not so view it. It does not repeat something that she had said to the officers and her father, but the witness on the stand merely tells what occurred.

Bill No. 2 complains of a question asked the father of the little girl, as follows: "Did she tell you then—did you ask her then why she hadn't told you before?" We cannot tell from the bill where this occurred and no answer is shown to have been made. The bill recites that they objected to "this testimony" because it was hearsay and prejudicial and was three days after the occurrence, but we are not able to determine from the bill what evidence was given, if any. The bill only contains the question asked. Whether or not it is inflammatory and prejudicial, or whether or not it was harmful, cannot be ascertained from an examination of the bill. It reflects no error.

Bills No. 3 and 4 make complaint about questions asked appellant on cross-examination. These bills are in the same con-

dition as bill No. 2. No evidence is shown and no error indicated.

Bill of Exception No. 5 complains of further cross-examination of appellant in which he was asked if it was not a fact that the girl told the truth about it. The question was followed by the further question: "Why don't you come clean and tell the jury, and ask for a little mercy?" To one or both of these questions the defendant answered, "No, Sir." The district attorney then said: "You are afraid to admit, because you know you will go back to the penitentiary." To this statement the defendant said, "No, Sir."

Obviously, this bill is not worthy of consideration because we are unable to understand what complaint appellant has in mind. The state had a right to ask, in some manner, about his former conviction and we see nothing inflammatory about his answers. The bill contains more than one question and answer and we do not see how the trial court could have ruled on one without ruling on the other. If either is admissible the bill would be fatally defective even if the other should be error.

Finding no reversible error, the judgment of the trial court is affirmed.